**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**WEIDA FREIGHT SYSTEMS, INC., *et al.*,**

**Plaintiffs,**

**v.**

**EVANS DELIVERYCOMPANY, INC.,**

**Defendant.**

**Case Number 2:23-cv-3873**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Kimberly A. Jolson**

**OPINION AND ORDER**

This matter is before the Court on Defendant Evans Delivery Company, Inc.'s Motion for Summary Judgment (ECF No. 41) and Plaintiffs Weida Freight Systems, Inc. and Solve Together LLC's Motion for Summary Judgment (ECF No. 42). The Court finds that genuine issues of material fact exist precluding summary judgment, thus Defendant's Motion (ECF No. 41) is **DENIED** and Plaintiffs' Motion (ECF No. 42) is **DENIED**.

**BACKGROUND**

This case is about a shipment of thousands of cartons of sanitizing hand wipes. (*See* ECF No. 1, ¶ 10.) Plaintiffs allege that the cargo was damaged while in possession of Evans's possession. (*Id.*)

The relevant entities in this case are: (1) Solve Together, a worldwide distributor of safety and sanitizing products and the owner of the cargo; (2) Weida, a freight forwarding company[1] hired by Solve Together to arrange the transport of the cargo; and (3) Evans, a motor carrier company hired by Weida to transport and temporarily store the cargo. (*Id.* ¶¶ 5–6, 9, 12–

[1] "A freight forwarding company arranges for, coordinates, and facilitates cargo transport, but does not itself transport cargo." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 19 (2004).

13.) There is also a second, related Weida entity, Weida Freight System Co., Ltd., a non-party that issued the bill of lading[2] in this case. The Weida entities are related (Tirado Dep., ECF No. 41-2, 44:17–24), but their roles are not clearly delineated in the record.[3]

The relevant shipping documents are: (1) a "Combined Transport Bill of Lading," issued by non-party Weida Freight System Co., Ltd. that indicates Cincinnati, Ohio as the place of delivery and (2) a "Sea Freight FCL Delivery Order" issued by Weida that designates Hebron, Kentucky as the place of delivery. (ECF Nos. 41-3, 41-4.)

The cargo traveled from Shanghai, China to a port in Los Angeles, California by ocean carrier and then by rail to a container yard in Cincinnati, Ohio. (Tirado Dep., 35:13–36:2.) Weida then contacted and hired Evans to transport the cargo by truck to its warehouse in Columbus, Ohio for temporary storage. (*Id.* 64:18–19, 65:19–23, 66:1–11; ECF No. 41-5.) Evans offloaded the cargo and placed it on pallets. (Tirado Dep., 65:19–23.) After, it sent confirmation emails to Weida noting damage to some cartons and providing photographs. (Tirado Aff., ECF No. 42-1, Ex. D, PageID 929–31.)

Approximately two months later, Weida hired non-party K.E. Warehousing and Distribution to pick up the cargo. (Tirado Aff., ¶¶ 11–13; *Id.*, Ex. E, PageID 937.) When Evans went to prepare the cargo, it notified Weida that moisture was leaking out of the containers,

[2] "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of the carriage, and serves as evidence of the contract for carriage." *Norfolk S. Railway Co. v. Kirby*, 543 U.S. 14, 18 (2004).

[3] For example, Plaintiff Weida's corporate representative, Juan Tirado, testified that "we were the freight forwarder for the shipment" and used "we" as the entity that coordinated the ocean leg of the shipment. (Tirado Dep., ECF No. 41-2, 27:1–3, 35:13–15, 38:22–39:12.) But occasionally, he referred to non-party Weida as "Weida in China." (*Id.* 37:1.) Upon questioning about the distinction between the entities he said, "they're both us. However, I believe one is our China offices" and agreed that the companies are related. (*Id.* 44:17–24.)

causing all of the cartons to deteriorate. (*Id.*, Ex. E, PageID 936.) Evans attributed the damage to the previously damaged cartons, asserting that they compromised the integrity of the full shipment during storage. (*Id.*) When K.E. Warehousing picked up the cargo, it determined that the full shipment was damaged. (Tirado Dep., ¶ 13; Tirado Dep., 44:4–6.) Plaintiffs assert that Evans caused the damage by incorrectly loading the pallets and storing cartons upside down, which caused them to leak and damage all of the cartons. (Tirado Dep., 72:3–8.)

K.E. Warehousing transported the cargo to its warehouse, where it remains during the pendency of this litigation. (*Id.* 44:7–11; Tirado Aff., ¶ 14.)

Plaintiffs sued Evans for the loss of the cargo. (ECF No. 1.) They bring a single cause of action under the Carmack Amendment, 49 U.S.C. § 14706, to the Interstate Commerce Act. (*Id.*) They seek the invoiced value of the cargo, as well as disposal costs. (*Id.* ¶¶ 19, 22.) After conducting discovery, the parties filed cross-motions for summary judgment (ECF Nos. 41, 42). Each filed responses in opposition (ECF Nos. 46, 47), and replies in support (ECF Nos. 48, 49).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that the nonmoving party lacks evidence to support an essential element of its claim. *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56).

A genuine issue of material fact exists if the nonmoving party can present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material

facts." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (quoting *Moore v. Philip Morris Cos. Inc.*, 8 F.3d 335, 340 (6th Cir. 1993)). "The key issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Liberty Lobby*, 477 U.S. at 251–52). In making that determination, the court does not weigh the evidence or determine the truth of the matter, but it decides whether a genuine issue exists for trial. *Liberty Lobby*, 477 U.S. at 249.

The standard of review does not change when the parties file cross-motions for summary judgment. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) "The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 391 (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

**ANALYSIS**

Plaintiffs move for summary judgment on their Carmack Amendment claim on the basis that Evans is liable under the Carmack Amendment as a motor carrier. (ECF No. 42.) Evans moves for summary judgment asserting that the Carmack Amendment does not apply and the claim should be dismissed as a matter of law. (ECF No. 41, PageID 736.) Evans also argues that, under the terms of the Combined Transport Bill of Lading, the claim is time-barred or, alternatively, its liability is limited by its Rules Tariff. (*Id.* PageID 740–44.)

**I. Carmack Amendment**

"The Carmack Amendment . . . created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). Its purpose is to "relieve cargo owners 'of the burden of searching out a particular negligent carrier responsible from among the often numerous carriers

handling an interstate shipment of goods.'" *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 98 (2010) (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)). Accordingly, it requires a "receiving carrier" to issue a Carmack-compliant bill of lading and imposes liability on the receiving and delivering carriers for damage occurring during the shipment. *Id.*; *see also Exel*, 807 F.3d at 148.

The Carmack Amendment does not apply, however, to a "domestic inland segment" of "a shipment originating overseas under a single through bill of lading." *Kawasaki*, 561 U.S. at 100 (2010). A through bill of lading "cover[s] cargo for the entire course of shipment, beginning in a foreign overseas country and continuing to a final, inland destination in the United States." *Kawasaki*, 561 U.S. at 93, 94. As explained by the Supreme Court, "[a]pplying Carmack's provisions to international import shipping transport would . . . undermine the purpose of [the Carraige of Goods by Sea Act], to facilitate efficient contracting in contracts for carriage by sea." *Id.* at 109 (citation modified); *see also Progressive Rail Inc. v. CSX Transp., Inc.*, 981 F.3d 529, 532 (6th Cir. 2020) ("A maritime contract may set the liability rules for an entire trip, including any land-leg part of the trip, and it may exempt downstream subcontractors.") Thus, where cargo is received overseas under a through bill of lading that covers the entire journey, the domestic inland carrier is not a receiving carrier under the Carmack Amendment, and the terms of the through bill of lading govern the shipment. *Id.* at 101–02.

There is no dispute that the Combined Transport Bill of Lading is a through bill of lading. (ECF No. 41, PageID 739; *see* ECF No. 42, PageID 910.) The issue is whether it applies to Evans's leg of the journey. If it does, then the Carmack Amendment is inapplicable and the terms of the through bill of lading apply instead.

The Supreme Court has explained that "ascertaining the shipment's point of origin is critical to deciding whether" the Carmack Amendment applies to a motor carrier. *Kawasaki*, 561 U.S. at 101. Specifically, for Carmack to apply, the journey must begin with a receiving carrier issuing a Carmack-compliant bill of lading. *Id.* at 102–03; *see also* 49 U.S.C. § 14706(a)(1). "Carmack does not apply if the property is received at an overseas location under a through bill of lading that covers the transport into an inland location in the United States." *Kawasaki*, 561 U.S. at 103. In that circumstance, there is no receiving carrier subject to the Carmack Amendment, but rather "the initial carrier . . . receives the property at the shipment's point of origin for overseas multimodal import transport." *Id.* A carrier, thus, "does not become a receiving carrier simply by accepting goods for further transport from another carrier in the middle of an international shipment under a through bill." *Id.* at 104.

The Supreme Court's decision in *Reider v. Thompson*, 339 U.S. 113 (1950), is also instructive here. The Court found that the Carmack Amendment applied to the inland leg of an international shipment because there was no through bill of lading indicating the final place of delivery, Boston. *Id.* at 117. Thus, the cargo's travel from the port in New Orleans to Boston constituted a new, separate contract for carriage. *Id.* The Court explained, "If the various parties dealing with this shipment separated the carriage into distinct portions by their contracts, it is not for courts judicially to meld the portions into something they are not." *Id.* The *Kawasaki* Court recognized this principle, stating that the Carmack Amendment would apply to the inland portion of a shipment if the through bill of lading ended at a U.S. port and the cargo owner then had to contract separately with a new carrier to complete the inland leg of the shipment. *Kawasaki*, 561 U.S. at 102, 105.

The Court finds that there is an issue of material fact as to whether Evans's portion of the shipment was a continuation under the through bill of lading as in *Kawasaki*, or a new, separate contract for carriage as in *Reider*.

The analysis begins with the intended final destination of the cargo under the through bill of lading. Plaintiffs emphasize that the through bill of lading ends in Cincinnati, Ohio. (ECF No. 47, PageID 964; *see* ECF No. 41-3, PageID 888.) Because Cincinnati, Ohio is designated as the place of delivery, they argue, the cargo could not have moved to Columbus, Ohio under the through bill of lading. (ECF No. 47, PageID 964.) But the Court is not convinced. The terms of the through bill of lading contemplate the possibility that the owner of the cargo (Solve Together) may require delivery of the cargo at a place beyond the place originally designated in the through bill of lading if the carrier (Weida Freight System Co., Ltd.) agrees. (ECF No. 41-3, PageID 889, ¶ 4.) In that case, the through bill of lading continues to apply as if the new destination was designated in the through bill of lading. (*Id.*)

Evans asserts that Weida asked it to take the cargo beyond the place of delivery, first to its warehouse in Columbus, Ohio and eventually to Hebron, Kentucky. (ECF No. 41, PageID 732; ECF No. 48, PageID 971, 974.) The Sea Freight FCL Delivery Order supports this assertion: it lists Cincinnati, Ohio, as the location of the cargo; Hebron, Kentucky, as the place of delivery; and Evans as the "transport company." (ECF No. 41-4.) It also lists Shanghai, China as the place of origin and identifies the through bill of lading by its reference number as the "House Bill of Lading." (*Id.*) But the record does not clearly establish that Solve Together and either Weida entity agreed to extend delivery beyond Cincinnati under the through bill of lading.[4] Thus,

[4] Weida's corporate representative testified in his deposition that, at some point in time, Solve Together canceled the cargo. (Tirado Dep., 60:20–63:15.) First, it is unclear when the

to find that the Carmack Amendment does not apply, the Court would have to infer that they made such an agreement.

The record is similarly unclear about the nature of the arrangement between Weida and Evans. Plaintiffs assert that Weida negotiated a contract with Evans "completely outside the terms of the Through Bill of Lading." (ECF No. 47, PageID 964.) Although Weida and Evans discussed certain details and negotiated storage prices (ECF No. 41-5, PageID 891–95; Tirado Aff., Ex. C, PageID 925–27), the record does not establish what the parties intended under the circumstances at the time[5] and based on industry practice. Namely, it is unclear what type of carriage they thought they were negotiating—an inland leg of a shipment under a through bill of lading[6] or a new, separate shipment. Accordingly, to determine whether the Carmack Amendment applies to Evans's portion of the shipment, the Court would have to infer the parties' intent at the time of negotiations.

Accordingly, the Court finds that genuine issues of material exist for the fact finder to determine: (1) whether Solve Together and Weida agreed to extend the place of delivery under the through bill of lading to Hebron, Kentucky and (2) whether Weida and Evans intended for Evans's leg of the journey to be a continuation of the through shipment or a new, separate shipment.

---

cancellation occurred and what a cancellation means in these circumstances. Second, the effect of that cancellation, if any, on the through bill of lading is also unclear.

[5] *See supra* note 4.

[6] Notably, it is not unusual for a freight forwarder to subcontract with separate carriers for different portions of a shipment under a through bill of lading. *See e.g.*, *Kawasaki*, 561 U.S. at 94; *Progressive Rail Inc. v. CSX Transp., Inc.*, 981 F.3d 529, 531 (6th Cir. 2020).

Having established that genuine issues of material fact exist, the Court addresses two other arguments raised by the parties. First, the fact that Evans did not issue a bill of lading does not resolve whether the Carmack Amendment applies. Although it could provide insight into Evans's understanding of what type of carriage it agreed to, that fact alone does not resolve the issue because "failure to issue a receipt or bill of lading does not affect the liability of a carrier" under the Carmack Amendment. 49 U.S.C. § 14706(a)(1). The absence of a bill of lading therefore does not resolve the question of whether Evans's portion was part of the through shipment or a separate domestic shipment.

Second, the fact that two different Weida entities coordinated different legs of the shipment has no effect on the Court's analysis. This is because it is not "unusual for subsidiaries of a parent corporation . . . to aid one another in carrying out a contract for multimodal transport. Cooperation between separate and distinct, yet related, subsidiaries is a mainstay of modern contractual arrangements." *Progressive Rail Inc. v. CSX Transp., Inc.*, 981 F.3d 529, 534 (6th Cir. 2020). In a similar vein, the fact that Weida, rather than the ocean carrier, contacted Evans does not automatically signify a new contract for carriage. *Id.* (explaining that while some through shipments involve contracts in which the shipping intermediary retains the inland carrier, "does not mean all transportation agreements use this model").

For the reasons explained above, the Court finds that genuine issues of material fact exists as to whether the Carmack Amendment applies in this case. Accordingly, Plaintiffs' Motion for Summary Judgment (ECF No. 42) is **DENIED** and Evans's Motion for Summary Judgment (ECF No. 41) is **DENIED** on the Carmack Amendment.

## II. Evans's Remaining Arguments

Evans argues that, under the terms of the through bill of lading, Plaintiffs' claim is time-barred or, alternatively, its liability is limited by its Rules Tariff. (ECF No. 41, PageID 740–44.)

But the through bill of lading terms apply only if the Carmack Amendment does not. *See Kawasaki*, 5561 U.S. at 100 (holding that the terms of the through bill of lading govern the parties' rights in the absence of the Carmack Amendment). Because the Court found that there are genuine issues of material fact regarding whether the Carmack Amendment applies, the Court does not reach Evans's remaining arguments.

In Evans's response to Plaintiffs' summary judgment motion, and in its reply in support of its motion, Evans raises a new theory that its Rules Tariff applies independent of the through bill of lading under 49 C.F.R. § 1090.2. (ECF No. 46, PageID 955–56; ECF No. 48, PageID 974–75.) Without delving too far into the issue, 49 C.F.R. § 1090.2 excludes certain services from the requirements of 49 U.S.C. subtitle IV, where the Carmack Amendment is codified. It also, however, states that rules tariffs do not apply to such services. 49 C.F.R. § 1090.2. Thus, Evans's argument is unavailing.

For these reasons, Evans's remaining arguments are **DENIED**.

*   *   *

In conclusion, the Court cannot determine whether the Carmack Amendment applies in this case. To do so, the Court would have to draw inferences regarding two factual issues. First, whether Solve Together and Weida agreed to deliver the cargo beyond the place of delivery named in the through bill of lading. And second, whether the negotiations between Weida and Evans created a new contract for carriage separate from the through bill of lading. The parties have not provided the Court with insight into industry standards and context that informed their decisions at the time. Accordingly, neither side has met its burden to show that there are no genuine issues of material fact, and the Court denies the parties' cross-motions for summary judgment.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court **DENIES** (ECF No. 41) Defendant Evans Delivery Company Inc.'s Motion for Summary Judgment and **DENIES** (ECF No. 42) Plaintiffs Weida Freight Systems, Inc. and Solve Together LLC's Motion for Summary Judgment.

Additionally, the Court **DENIES** (ECF No. 53) the parties' Joint Motion to Stay Case Deadlines and Hold Case in Abeyance.

This case remains open.

**IT IS SO ORDERED.**

**9/8/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**